Good morning, Your Honors. May it please the Court, my name is Keith Hilzendegger, and I am with the Office of the Federal Public Defender in Phoenix, and I represent the defendant in this case, Jesse Ulloa. I want to briefly thank the Court for rescheduling this case to today so that I can attend my brother's college graduation tomorrow. I guess you wish it was 11. Well, it's going to be, the storm is going to be in Arizona tomorrow anyway, so. This Court should vacate Mr. Ulloa's conviction. First, the trial judge improperly partnered with the jurors in their fact-finding process when he asked them what information would break their deadlock, and then provided that information. And second, the record here doesn't support the trial judge's decision to overrule Mr. Ulloa's Batson challenge to Panelist 30. On the Batson issue, there is no evidence that Mr. Ulloa's decision to overrule Mr. Ulloa's Batson challenge to Panelist 30 would have a negative effect on the trial judge's decision to overrule Mr. Ulloa's Batson challenge to Panelist 30. And so, I'm going to ask the Court to move the case forward. I'm not conceding or waiving any of the other Batson claims, but I think that's the most important one. I'm happy to talk about the others if the panel is interested. In United States v. Evanston, this Court said that a trial judge abuses his discretion to manage jury deliberations when he asks questions that make the jury divulge the state of unfinished deliberations, and then takes some kind of action that makes the judge a partner in the fact-finding process. Your Honor, I suggest what my colleague, who was second chair of defense counsel, suggested that the judge had done, which is give a proper Allen charge, according to this Court's ruling. Most counsels object to Allen charges. Most counsels object to Allen charges. That's correct. I've never heard a defense counsel come into court and say, Judge, they're hung. Give an Allen charge. Well, there's sort of a progression of things that you can do when the jury says they're stopped. I always decline to give an Allen charge. That's a matter for the Court's discretion, of course. What the concern on Monday morning was, the jury comes back with this note that says, we seem to be unable to reach a unanimous verdict. What do we do now? That was the first time that they had announced that they were deadlocked. Friday afternoon, their question was, well, how do we apply the insanity defense to the facts of this case? And the judge didn't really answer that question. He did what this Court in Arizona v. Johnson said was the right thing to do, which was refer the jury back to the instructions. And an hour and a half or so later is when the jury announced that they were deadlocked. The response to the deadlock, what the judge wanted to do, what he said over and over again, what he wanted to do was give the jury an answer to their question that would propel them, not compel them, but push them in the direction of reaching a verdict. And there's something wrong with that. Yes, Your Honor, there is. As long as the judge is neutral? No, I don't think that they If the judge remains neutral, there's something wrong with trying to encourage the jury to reach a verdict? Is that what you're saying? I shouldn't have said what I said quite so forcefully. As long as the judge remains neutral, I agree with Your Honor's question. Okay. What did he do here that wasn't it? Well, the jury's question that In that, you know, in that one answer, to answer that one question in that one time period, you know, when he said, what can I do to help? So what can I do to help you? He didn't say what can I do to help you. He said, if I gave you an answer to that question that you asked Friday afternoon, would you be able to reach a verdict, which is different than saying, what can I do? Well, let's assume it's different, but what's wrong with it? Because as soon as the jury says yes, and then the judge proceeds to give them the answer to the question, you know, the judge has He didn't exactly do that. He just explained the law. He explained the law correctly. I don't think that the instruction was entirely legally correct, Your Honor. You're saying the instruction itself was substantively erroneous as a matter of law? I think the instruction was legally incomplete, at the very least, because the jury was asking about the insanity defense, and the judge's response came in terms of the mens rea element of the crime, knowingly entering and remaining in the United States. Those things talk past each other, because a person can act knowingly in the sense that they are aware of what their body is doing, what they're doing, and not acting through ignorance or mistake. And at the same time, still not appreciate the nature and quality of their actions or the wrongfulness of their actions. And for the – you know, the instruction was legally incomplete, I think, because it didn't address the insanity defense. And the other thing the instruction didn't do is it Well, just a minute. There was an insanity defense given on it, right? That's correct, Your Honor. The original jury instructions gave this Court's model instruction on the insanity defense. So then the defense counsel objected on that basis, that it should have been repeated? Is that what you're saying? Well – The insanity defense should have been repeated at the same time? I don't think that was the specific objection, Your Honor. And by the time What was the specific objection? I mean, that's the objection you're making now. Which is a different objection than the one that was made at trial. I want to make sure that I'm – that we're both talking about the same point in this discussion. Are you talking about when the jury came back and said, what do we do to break this deadlock? Or are you talking about earlier when the judge's first response to the question was, just refer back to the instructions? No, no, no. It's when, you know, they sent the note out, right? And they talked about they need some clarification of the insanity defense. Isn't that basically what the note said? That was the first note, the note on Friday afternoon. Now, it's not the answer to that note that you're complaining about? Not so much, no. The – I think where the judge crossed the line. So you're up to Monday morning? Yes. All right. Now, what happened on Monday morning that was error? What happened on Monday morning was, after the jury had been referred to the instructions and came back and said, now we're unable to reach a unanimous verdict, the judge then went back and said, well, what if we gave you a more direct answer than just refer to the instructions? What if I gave you an answer that addressed the factual premise of the question that you brought? Because the jury didn't ask a purely legal question. The jury said – in essence, the jury asked how to apply the insanity defense to the facts that were presented during the trial. Now, is that when the objection was raised that judges should not say anything about the fact that I didn't raise the subject of the trial? Yes. Now, was there ever an objection to the substantive correctness of the trial? It was the process of hearing the trial. There was also an objection to the substantive correctness of the trial. And where is that objection? What was the nature of the objection? The nature of the objection was that by – by requiring the jury to conclude that Mr. Ulloa was insane during the entire period that he was in the United States, rather than just on the date he'd been found as charged in the indictment, that improperly guided the jury's deliberations, number one. And number two, it was a constructive amendment of the indictment. Well, basically, you're saying that there was – should not have been anything to do with the violation of the indictment. It was a violation of the indictment. Yeah. Illegal reentry is a continuing offense. So, you know, tell me about Bailey. What's the significance of that case? If I read that, there was a reversal there. That was an issue of escape. And that was a different violation. I'm sorry. Which case, Your Honor? The decision of Bailey. Okay. And I just slipped out this paragraph. Most of it varies. It's often a variance. In the indictment, merely because defendants are not in the indictment under the theory of escape as a continuing offense. We have held on several occasions that an indictment is sufficient if it first contains the elements of the offense charged, fairly informs the defendant of the charge against you as the defendant. Second, it was a complete and equitable conviction in law or future prosecution of the same offense. These indictments were valid and sufficient under the standard. So, as I read Bailey, it was – people are saying that you do not have to allege a specific continuing offense. Your Honor, Bailey deals with a variance rather than a constructive amendment. Our objection to the substance of the supplemental instruction – So what is the difference between the variance and the constructive amendment of the negligence of our indictment in the context of the continuing violation? There's a – the complaint here is that there's a difference between the charge that the grand jury returned and the evidence that would be available for the pettit jury to convict the defendant. And here, if the grand jury was presented with the theory and returned an indictment based on the theory that the crime took place on or about October 23, 2011, and the pettit jury was allowed to convict by – based on evidence that dealt with a period of time that preceded this date by as much as 10 months, that expands the amount of evidence that, you know, the jury may not have invited on all of those facts if it had known. And that's what makes it a constructive amendment, which isn't allowed, as opposed to a variance. So, you know, if you go to the instructions that were given, so the jury's deliberately – before the jury raised these questions, the judge properly instructed on the elements of found in offense. Correct. Right? And those elements are – here was a – after – reentered after a prior deportation. Right, right. So the first was the defendant was deported from the United States. Second, thereafter, he voluntarily entered the United States. After entering the United States, the defendant knew that he was in the United States and knowingly remained. Or that he was found in the United States. So the whole issue of insanity, it doesn't just go to found in, the date that he was found in. Right? Well, the answer is – Found in is nothing more than a passive state. That's correct, Your Honor. Insanity also goes to the alienage element that's charged. You know, one of the things that Mr. Ulloa's mental defect may have impeded his ability to understand was whether or not he has a legal right to be in the United States. And I want to reserve some time for rebuttal, but I also want to answer your question. Yes. So then you go to the insanity defense instruction, which immediately followed. And it talks about at the time the crime – the sanity of the defendant at the time of the crime charged is therefore a question you must decide. At the time of the crime charged. At the time of the crime charged. And our objection, our substantive objection to the supplemental instruction was that the time charged and the time that we presented to the jury, we focused on was October 23rd, 2011, rather than the entire time in the country. See if I can shift the discussion to something I'm curious about. You had expert testimony on the issue of sanity, correct? That's correct. And what was the scope and breadth of that testimony? Was it a crime-proof issue? Or was the insanity existing on that particular occasion? Or was it broader than that? The testimony that was relevant to Mr. Ulloa's insanity defense was that as a person in his boxing career, he suffers from a progressive cognitive defect that affects his ability to understand. So that was not really a crime-proof issue, but they did, based upon the boxing issue, the cognitive defect. It was a basic defect. I don't think there is a crime-proof issue. The jury would have been able to draw that conclusion, yes. Yes, sir. Even more so, the jury could have drawn that conclusion because the expert opinion was not that it affected me. It could have affected me. Right? It was not categorical. Is that right? I'm not sure, honestly, Your Honor, off the top of my head. You know, it makes sense to me that the doctor would have been somewhat equivocal, as you suggested. But if the jury believed the doctor, then the jury had the basis to find that they're not guilty. It's insanity. That's correct, Your Honor. Obviously, they didn't believe the doctor. My point I'm trying to make is that it's not a civil case. It's a surprise. It's not a civil case. The jury was focused on the jury. They didn't believe the doctor. I didn't believe the doctor. I didn't believe the jury. That was the expert testimony that we presented to the jury. Yes, that's correct. I think it does make some difference, Your Honor. Thank you. Good morning, Your Honor. My name is Kiyoko Patterson. I am an Assistant United States Attorney in the District of Arizona, and I represent the government today in this case. I want to talk a little bit first about some of the points in which Judge Block had discussed with defense about the importance of the evidence. The court is correct, Your Honor, that the add-on to your question with regard to it was the expert in that case did not just testify with regard to one specific date of the found in. There was actual, in addition to that, the testimony that was given by the trial in the court, I'm sorry, Your Honor, is also there were family members who had testified, and there was information that was given and testimony that was provided from family members and the dating back to the 1990s and the mid-1990s. And all of it had led up into the defense's theory that the defendant had experienced some traumatic event in his boxing career, and because of that, he was unable to appreciate the wrongfulness of his acts. I want to speak to first, Your Honor, with regard to the issues. The district court did not abuse its discretion nor coerce the guilty verdict by giving a supplemental jury instruction to the jury, nor did it find, nor did that same supplemental jury instruction amend the indictment. We're just discussing a little bit about that first. With regard to the amendment issue, Your Honor, and the court already touched on this, which is in no way did the supplemental jury instruction expand the scope of the evidence in which the defendant was to be found guilty on. And that argument was without merit because the indictment is a notice document, and in that, the defendant discovery, the indictment, the whole purpose of the indictment, Your Honor, is to give notice to the defendant. And in this case, specifically in 1326 cases, we have an individual who was notified of a found-in date, and I think it's particularly important with regard to 1326 cases where we have a deportation date and where there is a deportation date, there is a span of time in which the defendant could build their defense around. In addition to that, Your Honor, there was testimony that was given by one of the agents that the defendant himself had told the agent upon contact that he had entered the United States nine months previously. In addition to that, the supplemental instruction did not mention any evidence in the instruction, nor because it was a legal question, it was not a factual question, which is what I believe the defense is stating, that somehow the instruction that was given by a judge, by the district court, was somehow coercive and commented on the evidence, and that's not the government's case. I think it's particularly important with regard to the coercion argument as well,  Your Honor, that the jury did not interfere with the fact-finding process. As the court can see through the record, the judge took great skill and careful analysis in determining the legal issue and ensuring that they got the right standard correct. In fact, there's a number of cases, a small number of cases, in which the court presumes that the conduct is coercive, like in Bolenbach, where it was misleading the jury or giving an incorrect jury instruction. That's not the case that we have here. The Butchership Court was very careful in answering the jury's concern, and because of that, it's left to his discretion, and in the manner in which he does that, we believe he was correct. Additionally to that, in Bransfield, the court did not look into the numerical division of the jury either. We don't have those facts here, as well as in Sewell, which is to give two or more Allen charges presumptively to be considered to be coercive. That's not our facts either. The defense also raises the court of Evanston, the case in Evanston. The government's position is that Evanston just does not apply in this case. And the reason that Evanston does not apply is because Evanston was regarding re-argument. In that case, the court did inquire into the reason that was holding up the jury and then went back and asked to hold supplemental arguments, and they argued for ten more minutes on that specific issue. That was considered overreaching by the court and, of course, was determined to be coercive. For that reason, those are all, in all those cases, that's not the case that we have here. In our case, the district court was very careful about crafting the appropriate legal correct standard for the court or the jurors to clear away any confusion that they had with regard to how to do it. Well, their confusion, it's not surprising if you read the instructions, because it talks about, as I was mentioning, at the time of the crime. You know, they're trying to figure out how do you put this all together over this period of time. Your Honor, I think that's a fair assessment. And that was the case. From what I could see was that the judge just tried to clarify the insanity instructions in the context of a continuing violation. The government agrees, Your Honor. That's exactly what we believe as well. And again, the manner in which, in looking at the totality of the circumstances, the court examines the actions and the statements that are given by the district court under those totality of the circumstances. In our record, you can see that the district court took great care in deliberating and also coming up with a factually correct statement. And he recognized that there was a gap in the instruction. The reason why he knew that there was a gap was there was this discussion, of course, with defense counsel about the first note that came back that said that they needed more clarification on the supplemental, on the jury, on how the continuing offense applied to the insanity defense. Of course, they referred back to the jury instructions. And then thereafter, the second note, which came back on Monday morning after about an hour and a half, said that they were deadlocked. The judge, in his discretion, understood that the possibility was that they were still hung up on this first question and then asked them. And I want to be really specific with regard to that. The language in which the question that was sent back, it says, if the court gives a more specific answer to your previous question, would you wish to continue to deliberate to try to reach a unanimous verdict? And that is at ER 994. I want to make sure that the Court understands that that language was, that the Court was not inquiring into the specific issues that they were hung up on, but it was merely asking them, if I answer your question, would you like to deliberate further, giving them that room in order not to overreach by the Court. Why don't you turn to the Batson? Yes, Your Honor. With regard to Batson. And why don't you focus on Jura 30, the one who attended the rally? That's Jura 25, Your Honor. Which one was 30? 30, Your Honor, is the mother who had a son who was convicted of armed robbery and serving 7 years. Specifically with the ---- But before you do that, didn't the district court just err on the third step of Batson? No, Your Honor. We don't believe that the district court erred in Batson, in that step 3 analysis. I think it's important to note, especially in the cases that were cited by defense, one of those cases is U.S. v. Alanis, which says that there's a footnote that talks about there are no set procedures with regard to what happens at step 3. The requirement is that the district court conducts a sensitive inquiry into the reasons that are provided by the prosecutor. And in our record here, you can see that starting at ER 2 ---- Your Honor, there is no comparative analysis of the trial court, no. That is something that is a proper tool that could be used by the district court. In fact, in the case of Lewis v. Lewis, again, that's also cited, there are a list of factors that the court could consider, the district court to vet out and tease the issue of whether or not the strike was for pretextual reasons. And the court ---- and it's the government's argument that the district court in this case, particularly starting at ER 207, that the court did just that. As you can see, the court went through each reason that was provided by the prosecutor with regard to ---- we'll focus on juror number 25 who attended the pro-immigration rally. The district court in that case asked the prosecutor and the government, as well as defense counsel, why is this not a pretextual reason? Give us the reasons, and went through that analysis with them. And it clearly shows that he gave sensitive inquiry. Well, he found that they were neutral reasons. He found that they were neutral. But what he didn't do is go on ---- I don't know if he used neutral, the term neutral. What was it? He did make a ---- he did go through each one, like you said. But what he didn't do is he didn't go on and say, and I find that there's no ---- that there's not a ---- that these reasons are not pretextual. Well, Your Honor, I disagree. I think that the district court credited each of those reasons. Again, the prosecutor gave the reasons for each juror. And we can find everywhere for the reason which they gave the reason that was provided is supported by the record. And in addition to that, the careful analysis that he went through, again, he asked back and forth, not only defense, but he asked the government to further vet out whether or not the reasons were credible. I don't believe that you can use the magic words of credibility, but I don't believe that there has been any indication from the circuit courts that that is required. Your Honor, with regard to Juror 30 who attended the pro-immigration rally, the other point that I'd like to make with regard to that is there were additional reasons that Juror 25 ---- I apologize, Juror 25, who is the pro-immigration rally, who also had a premedicine and sports medicine background, those were additional reasons that were provided to the district court. We ---- the defense characterizes a high level of interest of Juror 25, that somehow this interest was not neutral or it needed to be a high level of interest. The government disagrees with that position, and the reason is, is that, of course, it's a facially neutral reason, but I think it's also supported and important to note in the record that there were individuals who were struck for cause who were on the opposite side of that issue, which were pro-immigration enforcement, and those individuals were not allowed to sit on the jury. So it was a facially neutral reason for ---- and we believe that it was also credible in order to strike Juror 25, and it did not violate that. Thank you, Your Honor. With regard to the amendment ---- Why don't you address for a minute this instructive amendment? Thank you, Your Honor. The government's position is that the district court did not amend the indictment. That neutral supplemental jury instruction that was given on the continuing offense and a legal reentry, again, the amendment is ---- is a notice document. And the discovery which was provided to the defense counsel in that case fills in those gaps with regard to the time. There was no mention of anywhere in the text of the language regarding any factual issues. Our position is, is that there was no amendment. I just want to be really clear, and it's hard ---- it was difficult for the government to address the issue of U.S. v. Ward that talks about the difference between a variance and amendment, but we believe that in this case there was no such amendment that was made to the indictment. The reality is, is that the defendant built ---- may have built their case around it. Well, here's the problem, as I see it, and maybe this is just inherent in the fact that this is continuing offense, but the indictment charges specifically that he was found on a certain date, right? Correct, Your Honor. And that, after, you know, being the point so forth, and that was in violation of 1526A. So that would ---- that doesn't give notice in the indictment that the entire period that he was in the U.S. is open, you know, for ---- up for grabs in terms of serving at the date of the violation. And then the instruction does nothing to the indictment. And the supplemental instruction infers that that's sufficient to meet the elements of the crime. So, I mean, it's more than ---- I mean, it's at least a culpable argument that expands the indictment. I disagree, Your Honor. And the reason is, is the Ninth Circuit in the case law regarding illegal reentry has been clear. It's very clear that it's a continuing offense. I understand that, but the jury was never told that. No, Your Honor. No, Your Honor. But also, with regard to that issue and not pleading the entry, the government is not required to plead entry or even to ---- even to specify that they know that they're in the United States. And the case in which the government relies on with regard to that is Belo Bahena, of course, but that was not cited in my brief. However, I do believe that that was an issue with regard to the general jurisprudence in 1326 cases that does say it's not required, you're not required to allege entry or ---- Would your answer be different if the medical testimony, the psychiatric testimony, did not find itself at one point making a statement in regard to the indictment and say that ---- No, Your Honor. I do not believe. I don't believe it because, of course ---- I see that my time is up, however. I'd like to ask your question. Yes, Your Honor. No, I don't believe that it would be different. And the reason why it's ---- it would not be different is because also with the jury instruction, the insanity instruction did advise the jury, you can consider evidence that was presented before and after the commission of the crime. It also advised that it could be ---- insanity could be temporary or could be extended. So the government's position is, Your Honor, that in either one of those situations, if it was ---- if the court in the scenario that you gave was to require that it be ---- that we were required to only prove on the found-in date or if we were able to prove on the entire commission of the crime, that the defendant did not meet his burden, because we are talking about an affirmative defense here. It's the defense's burden to prove by clear and convincing evidence that he was insane at the time of the commission of the offense under the statute. I'm sorry, Judge. The issue is what was the bond of the commission of the offense. Your Honor, and the commission is the government's position in the case law, all supports the time of the commission of the offense is continuing. I think that's the correct statement of the law. But the problem is that was never, you know, the jury was never told that. I mean, there's the instruction, time is time to talk about at the time of the crime, at the time of the commission of the offense. But it never says, remember the jury, you know, this is a continuing offense. That means, you know, he was guilty if you find his element from the time he entered and the time he was arrested. Your Honor, I think that goes directly to the discretion that's afforded to the trial court with regard to how to answer questions from the jury. That specifically goes to if I say that statement, that affirmative statement, am I overreaching, am I coercing or directing them to look at a certain piece of evidence within the trial? So it's the government's position that that is, in fact, not the case. It is within that wide discretion that's allowed in the manner in which they Your Honor, the government's position, and I argue this in my brief, which is, the notice requirement is the indictment. And as I indicated, specifically with regard to the point, yes, Your Honor, but with regard to that, there is, there are two dates in that indictment. It was the date in which he was removed, so we do have a removal date. And then we have, we also have the founding date. That is a time span in which, of course, defense could logically strategize, figure out how to present their, to present their case. But in addition to that, Your Honor, we have testimony that was provided in trial that this defendant actually had entered the United States nine months prior. So it's not really the same set of scenarios. The defendant, in an attempt to meet that burden, we issue, we also did provide testimony that he had entered nine months previously. Thank you. Thank you, Your Honor. You get one minute, and that's it. In my one minute, Your Honor, I want to say the government exercised a peremptory strike against Penalist 30, who had a negative experience with law enforcement, and who had a son in prison. It did not exercise a peremptory strike against Penalist 18, who had a negative experience with law enforcement, and himself had been charged with a crime. The government and the trial judge have never explained why, based on those similarities, the government's strike against Penalist 30 was pretextual. The district court only said it was facially neutral. The government has not defended that strike as not being a pretext, either in the district court or in this court. Let me ask you one question. If we went to reverse what would happen then? The case would go back, or there's a new indictment that's presented here. This case would go back for a new trial on the Batson issue, Your Honor. If this court grants relief on the Batson issue, it would go back for a new trial on the same indictment. No, no, no. Forget about the Batson issue or this issue, or whether or not this was a specific indictment. It was a specific indictment, it was a specific indictment. It was a specific indictment. We said that on this particular indictment we could not predicate a pretextual one. This would be a double-double-charging indictment. Your Honor, I think your question raises some double jeopardy issues that I know about. That's what I'm wondering about. On a different indictment, it's possible. Right, I think it's more theoretical. Thank you, Your Honor. Thank you, counsel. Have a safe trip back here. That ends our session for today. The matter is submitted at this time.
judges: Block, Tashima, Paez